ARTURO PIERETTI, petitioner,

*v.*

LETIZIA INNOCENTI PIERETTI, defendant.

[Decided January 26th, 1935.]

*Mr. Alfred A. Franck,* for the petitioner.

*Mr. David Weineck,* for the defendant.

CAMPBELL, A. M.

The facts are: The parties were married in 1912 and lived together in this state until August, 1925. During that month the wife left for Italy, accompanied by two children of the marriage. She was then pregnant, the child, Gino, having been born in Italy two months later. Her transportation, and that of the two children, was arranged and paid for by the husband. Her departure was under the friendliest of circumstances. In 1931 the husband visited his wife and children in Italy, remaining there for about a month. One of the children, who accompanied the wife to Italy, died there after the husband's return to this state. Their seventeen-year-old daughter returned with the husband and has ever since been in his custody. Subsequently, the husband filed his petition in this court for divorce for the cause of desertion. The wife filed an answer, service upon her having been by publication. The cause came on for final hearing, at which the wife was represented by counsel. A decree *nisi* was advised by me. At the conclusion of final hearing the question of custody and support and maintenance of Gino was continued for the purpose of permitting counsel to submit briefs.

Counsel have not submitted, nor do I find any reported cases in this state wherein a similar situation has been adjudicated.

The husband resists this application, generally, on the ground that while jurisdiction of this court was obtained over the wife and such of the children of the marriage as were domiciled in this state, or in the United States, it has not acquired nor can it acquire jurisdiction over Gino because he has never been out of the Kingdom of Italy; that the boy is beyond the jurisdiction of this court because its writ of *habeas corpus* would be ineffective in compelling his physical presence before this court. It is not the rule, as applying to the latter reason, that a writ of *habeas corpus* is the proper procedure. In *Power* v. *Power, 65 N. J. Eq. 93; 55 Atl. Rep. 111,* it was stated that it is not necessary to produce the body of a child into court in order that an order may be made

for its support; that the proper practice is upon petition to the chancellor, as *parens patriæ*, in a summary manner. See, also, *Nelson* v. *Wergland, 104 N. J. Eq. 334; 146 Atl. Rep. 32; Vincent* v. *Vincent, 108 N. J. Eq. 136; 154 Atl. Rep. 328.*

Authority for this court to make an order for custody and maintenance in the matter *sub judice* is found in section 25 of the Divorce act (*2 Comp. Stat. 1910 p. 2035*), which is, in part as follows: "Pending a suit for divorce or nullity, or after decree of divorce, it shall be lawful for the court of chancery to make such order * * * touching the care, custody, education and maintenance of the children, or any of them, as the *circumstances of the parties* [italics are mine] and the nature of the case shall render fit, reasonable and just, and to require reasonable security for the due observance of such orders, and upon neglect or refusal to give such reasonable security as shall be required, or upon default in complying with the order, to award and issue process for the immediate sequestration of the personal estate, and the rents and profits of the real estate of the *party so charged* [italics are mine] * * *." The portions which I have italicized I will refer to later.

As to the domicile of the husband in this state there is no dispute. As to the domicile of the wife: In *Hess* v. *Kimble, 79 N. J. Eq. 454; 81 Atl. Rep. 363,* Vice-Chancellor Leaming held, *inter alia,* that the term "residence," as used in our Divorce act of 1907 (*2 Comp. Stat. 1910 p. 2021*) includes not only the *factum* of residence but also the *animus manendi;* the residence required by statute being equivalent to domicile. In *Tracy* v. *Tracy, 62 N. J. Eq. 807; 48 Atl. Rep. 533,* the court of errors and appeals held that a *feme covert's* residence follows that of her husband but terminates with the reason upon which it rests; when the union between the two ceases, and an attitude of hostility arises, they may each have different residences. Cases cited. In *Rinaldi* v. *Rinaldi, 94 N. J. Eq. 14; 118 Atl. Rep. 685,* it was stated that a cause sufficient to justify a wife in leaving the matrimonial domicile of her husband and herself and acquiring

an independent domicile of her own, is such cause only as would entitle her to a decree of divorce or a judicial separation from him under the statute. Cases cited. It was also held (*In re Geiser's Will, 82 N. J. Eq. 311; 87 Atl. Rep. 628*) that the unity of domicile exists during coverture, unless the wife acquires one elsewhere by the husband's consent; that such consent may be either actual or constructive and may be manifested by acquiescence, by abandonment, or by such conduct inimical to cohabitation as would secure to the wife a decree of divorce, *a vinculo* or *a mensa et thoro.* And again, in *Brown* v. *Brown, 112 N. J. Eq. 600; 165 Atl. Rep. 643,* it was stated that where such residence or domicile is once established it is presumed to continue unless there be proof of the acquisition of a new domicile or residence; and to establish the latter more than a mere change of abode is requisite; the change of abode must be *animus manendi.* Cases cited.

Applying the foregoing rules to the circumstances under which the wife left her husband's domicile in this state, *supra,* it is evident that she has not acquired an independent domicile of her own in Italy, and, consequently, aside from any other rule applicable to this subject, neither has Gino acquired a domicile there.

As to the domicile of Gino: The court held, in *Rinaldi* v. *Rinaldi, supra,* that the domicile of a legitimate unemancipated minor, whose will cannot concur with the fact of residence, is, if his father be living, the domicile of the father; that a minor cannot change his domicile of his own will.

It will serve no useful purpose to further consider the subject of domicile. The reports contain many cases illustrating the doctrine; the literature of the law is replete with a discussion of the subject. The proofs disclose that Gino is an unemancipated minor. Applying the rule to the circumstances, I find his domicile to be that of his father in this state, irrespective of the fact that he has always resided in a foreign country.

Concerning custody: section 97-21 of an act entitled, "An act to amend an act entitled, 'An act concerning minors, their

adoption, custody and maintenance (Revision of 1902)'" (*1 Cum. Supp. Comp. Stat. p. 1556*), being an amendment of section 21 (*2 Comp. Stat. 1910 p. 2810*), provides: "In making an order or decree relative to the custody of children pending a controversy between their parents, or in regard to their final possession, the rights of both parents, in the absence of misconduct, shall be held to be equally charged with their care, nurture, education and welfare, and the happiness and welfare of the children shall determine the custody or possession." Section 21 of the original act (*2 Comp. Stat. 1910 p. 2810*) made no provision for "care, nurture, education and welfare." It was, evidently, the legislative intendment, in enacting this amendment, to have it considered and applied as a complement to section 25 of the Divorce act, particularly to the extent of individuating the responsibility for support and maintenance, because "nurture" means to give nourishment to, to feed, to bring or train up, to educate; it seems to fortify the construction I have placed upon section 25, *infra*.

The husband has seen Gino but once since his birth eight years ago. He evinces no affection for the boy nor has he contributed anything towards his support. That he chose to bring his daughter back with him from Italy, to the exclusion of Gino, coupled with his vigorous resistance to that portion of this proceeding as relates to support and maintenance, leads to the conclusion that he cannot be entrusted with the personal safety, morals, health and happiness of Gino even should the Kingdom of Italy be inclined to give full faith and credit to our decree awarding custody to him. I have concluded that the welfare and happiness of Gino warrant his being placed in the care and custody of his mother.

As to the support and maintenance of Gino: Section 19 of "An act concerning divorces" (*Rev. Stat. 1874-75 p. 254*), approved March 27th, 1874, provided that the "care and maintenance of the children" should be "by the said husband." This statute was repealed by *P. L. 1902 ch. 95*. It was succeeded by "An act for divorce and for decrees of nullity of

marriage and for alimony and the maintenance of children (Revision of 1902)," being *P. L. 1902 ch. 157*. Section 19 of this latter statute (repealed by *2 Comp. Stat. 1910 p. 2021*) is identical with section 25 of our present Divorce act. It is obvious that the legislative intent in enacting section 19 of the 1902 act, *supra,* as well as re-enacting it as section 25 of the present act, wherein were incorporated the phrases "circumstances of the parties" and "party so charged" (which I italicized, *supra*) was for the purpose of relieving the husband, or father, of the sole obligation imposed upon him by *Rev. Stat. 1874-75, supra*. Consequently, as applied to section 25 of the present Divorce act, "circumstances of the parties" is construed to mean the financial ability of the husband and wife jointly, and "party so charged" is construed to mean whichever parent is decreed to educate and maintain the children of the marriage.

The case discloses nothing from which it can be inferred or presumed that the wife is not of equal pecuniary ability with the husband to support and maintain Gino. Testimony adduced at the divorce hearing disclosed that the husband possesses unincumbered income producing real estate located in this state, and that he receives a salary of about $42 weekly from a position he has held for a number of years. For the purpose of judicially ascertaining the wife's financial status it will be necessary, of course, to take depositions in Italy, where she now resides. This will, undoubtedly, consume considerable time and, also, cause some measure of expense. Furthermore, the reasonableness of the amount to be finally allowed for Gino's support and maintenance will depend largely upon his needs and the financial ability of his mother and father, respectively. If his mother has means of her own she will be held to contribute toward his support and thus diminish the amount to be paid by his father; the rule in this respect not differing materially from that applied in the case of allowance of permanent alimony. In a matter such as this, consideration must be given to the care and attention the mother will be required to give to the boy, the assistance, if any, the mother will receive from him, and all

other surrounding circumstances that will tend to equalize the financial burden between the parents, as nearly as may be.

During the *interim*, however, I am of the opinion that the husband should contribute toward Gino's support. The amount shall be fixed at $20 per month (without deductions for cost of transmission) to be paid on the fifteenth day of each month, the first payment to be made on January 15th, instant. The method of transmission to Italy will be arranged between counsel. In the event of the husband desiring to inquire concerning the ability of Gino's mother to contribute towards his support, he may have an appropriate order for that purpose, the cost of such proceedings, however, to be borne by him.

Solicitor for the wife will prepare and submit an order in accordance with the foregoing. Counsel fee, upon this application, will be settled on usual notice.