165 N.J. Super. 328 (1979)
398 A.2d 141
MARILYN LYNN, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
ROBERT LYNN, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 27, 1978.
Decided January 24, 1979.
*332 Before Judges CONFORD, PRESSLER and KING.
Mr. Francis W. Donahue argued the cause for the appellant and cross-respondent (Skoloff & Wolfe, P.A., attorneys).
Mr. Richard H. Thiele, Jr. argued the cause for respondent and cross-appellant (Wharton, Stewart & Davis, attorneys).
The opinion of the court was delivered by KING, J.A.D.
Both parties appeal on the economic issues alone from this judgment of dual divorce granted on fault grounds. The trial judge denied alimony to the wife, Mrs. Lynn; ordered the husband, Dr. Lynn, to pay child support, and ordered equitable distribution of the marital property. The court's opinion is reported at 153 N.J. Super. 377 (Ch. Div. 1977).
The Lynns were originally married in 1958. They divorced in 1961. During this first marriage Dr. Lynn attended medical *333 school and interned; Mrs. Lynn taught school. In 1963 they remarried and lived together until Dr. Lynn deserted the marital home in April 1975. The Lynns had three children born of their second marriage. They were 12, 10 and 8 at the time of trial in September 1977. Dr. Lynn, age 43, had specialized in hematology-oncology. He exclusively treated patients afflicted with terminal cancer. The practice was lucrative; in 1974 and 1975 his net reported income was $80,000; in 1976 it was $110,000.
In December 1975 Mrs. Lynn filed a complaint for separate maintenance and support for herself and the three children in her custody. Dr. Lynn counterclaimed for divorce on grounds of adultery. She then amended her complaint, seeking a divorce for adultery and desertion. A pendente lite support order of $31,000 annually was entered in January 1976.
In July 1977, during the pendency of this action and before trial, Dr. Lynn sold his practice and accepted a full-time, three-year residency in psychiatry at St. Luke's Hospital in New York City. His salary during this residency is $17,000 a year. At trial Dr. Lynn testified that his lucrative practice was depressing and drained him both psychologically and emotionally. He was denied the satisfaction enjoyed by other doctors who were able to cure or at least stabilize their patients' illnesses. Dr. Lynn viewed himself as nothing more than a "money making machine" who was merely extending the lives of his patients for a few years. The trial judge found as a fact that Dr. Lynn's career change in response to his particular mid-life crisis was made in "good faith" and not to avoid his financial responsibilities to his family. Id. at 386. This finding is well-supported by the record.
The trial judge also found that Mrs. Lynn had committed, by her admission, many acts of adultery, beginning a few months after her husband deserted the marital residence. The judge found that many of these extra-marital, post-separation, sexual acts occurred in the marital home which Dr. Lynn was maintaining under the pendente lite order. In *334 his opinion the trial judge observed that "on at least one occasion an infant son saw something he should not have seen." Id. at 383. However, there was no contention that Mrs. Lynn was an unsuitable custodial parent, and Dr. Lynn did not challenge the award of custody to her. Dr. Lynn and his alleged paramour both asserted their testimonial privilege against self-incrimination when questioned about his alleged post-separation adultery. Dr. Lynn admitted taunting his wife with claims of his infidelity before he deserted the marital home in April 1975. He claimed that this was an argumentative device, and he denied any preseparation adultery.
The trial judge granted a dual judgment of divorce: Mrs. Lynn's on the grounds of desertion and Dr. Lynn's on the grounds of the post-desertion adultery. The judge found that Mrs. Lynn "did not prove by a preponderance of the evidence that her husband also committed adultery." Id. at 380.

I
We first consider Mrs. Lynn's cross-appeal from the denial of alimony on the ground of post-desertion adultery. There was no proof that Mrs. Lynn committed adulterous acts before Dr. Lynn left the marital home. Nor is there any inference to be drawn from the record that her post-separation adultery could further have undermined what by the time of his desertion was clearly a doomed marriage.
The trial judge correctly noted that matrimonial fault may be considered by a court when awarding alimony. The controlling statute states:
In all actions for divorce other than those where judgment is granted solely on the ground of separation the court may consider also the proofs made in establishing such ground in determining an amount of alimony or maintenance that is fit, reasonable and just. [N.J.S.A. 2A:34-23]
*335 The trial judge's denial of alimony to Mrs. Lynn was based on two premises. The first was that she was guilty of outrageous marital fault and criminal conduct, in violation of N.J.S.A. 2A:88-1. The second was that it was unlikely she would become a public charge if denied alimony.
On the first point the trial judge said, "Other than an adulterous wife, this court knows of no other litigant who is permitted to profit from the commission of a crime." Id. at 383. And the judge further stated: "It is no excuse or justification that the adultery was subsequent to her being deserted." Id. at 384. We decline to accept this rigid analysis as justifying a per se bar to an award of alimony, especially where the adultery is post-separation or post-desertion, and the extra-marital sexual activity did not precipitate the breakup of the union. Adultery is rarely prosecuted criminally and soon will not be a crime. The New Jersey Code of Criminal Justice, L. 1978, c. 95, pp. 279 to 581, N.J.S.A. 2C:1-1 et seq., approved August 16, 1978 and effective September 1, 1979, decriminalizes adultery and all other private consensual conduct between competent adults. N.J.S.A. 2C:14-1, et seq.; N.J.S.A. 2C:98-2. Indeed, notwithstanding this legislative action, a substantial doubt arises in view of recent appellate decisions decriminalizing private adult fornication and homosexual activity on state constitutional grounds of privacy and personal autonomy, as to the constitutionality of the criminal adultery statute, N.J.S.A. 2A:88-1. State v. Saunders, 75 N.J. 200 (1977); State v. Ciuffini, 164 N.J. Super. 145 (App. Div. 1978). See also, State v. J.O., 69 N.J. 574 (1974). We decline to accept the thesis adopted by the trial judge that an award of alimony to an adulteress is a reward for criminality which the law should regard as per se repugnant.
We also disagree with the trial judge's conclusion that Mrs. Lynn committed such "outrageous adultery" as to override all other considerations and make an award of alimony "wholly unjustified." Mrs. Lynn may have, in the eyes of many, been indiscreet and insensitive to her children by *336 seeing several men in the marital home after her husband deserted her. In certain blatant cases this could possibly bear on rights to custody or visitation, but those issues are not raised here by Dr. Lynn. See DeVita v. DeVita, 145 N.J. Super. 120 (App. Div. 1976).
Marital fault is irrelevant to equitable distribution but is not to an award of alimony. Chalmers v. Chalmers, 65 N.J. 186, 193 (1974). The Final Report of the Divorce Law Study Commission prepared before the adoption of the Divorce Act of 1971 stated (at p. 7) that "fault where so stated as a ground for relief, will be a proper consideration for the judiciary in dealing with alimony and support." This statement by the Commission was adopted by our Supreme Court with approval in Chalmers v. Chalmers, supra at 194, n. 4. This court alluded to that footnote reference as authority for a total denial of alimony in Mahne v. Mahne, 147 N.J. Super. 326, 329 (App. Div. 1977), certif. den. 75 N.J. 22 (1977). The cryptic Mahne opinion simply mentioned as the reason for the denial of alimony that the wife committed adultery with her husband's "best friend." Mahne temporarily startled the matrimonial bar because of the use of language implying adultery was always a bar to alimony, but the same part of the Appellate Division quickly clarified the broad implications thereof in Nochenson v. Nochenson, 148 N.J. Super. 448 (1977), by stating:
Thus, the holding in Mahne went no further than accepting fault as a "consideration" or factor in determining the grant or denial of alimony. In applying that rule to the facts and circumstances in Mahne we held that no alimony should have been awarded to the wife. We refrained from spelling out the lurid details of the adultery committed while the husband and wife were living together because we did not consider such exposition as within the bounds of propriety. Nor did we recount the contents of certain tapes or conversations between the wife and the paramour wherein the wife disdained the gifts, such as furs, which the husband had bestowed on her. We need say no more except that we concluded that the equities in Mahne precluded the award of alimony to the former wife. [at 449-450]
*337 Here Mrs. Lynn's admitted post-desertion sexual conduct was in our view hardly such egregious marital fault as to equitably preclude her right to claim alimony under the Mahne-Nochenson standard.
The question of the award of alimony to the adulterous wife was reviewed in the recent case of Gugliotta v. Gugliotta, 160 N.J. Super. 160 (Ch. Div. 1978), aff'd 164 N.J. Super. 139 (App. Div. 1978). There the husband obtained a divorce from his wife on the ground of adultery. The trial court awarded the wife $70 a week in alimony and the husband appealed. The only issue on appeal was the propriety of the award of alimony, and this court affirmed. The parties had been married 23 years. The wife worked part-time during the last several years of the marriage to help with the children's education. During this time an adulterous relationship with her employer developed. The trial judge, in evaluating the adultery in relation to the total marriage, stated:
This is not a case where the wife moved out to live with another man, or where she was supported by or was supporting a paramour, or where the husband was publicly debased or degraded. Under these circumstances this court determined that the many years of the marriage relationship and the parties' emotional investment in the marriage far outweighed the effect of the adultery insofar as it related to the wife's entitlement to alimony.
The trial judge in Gugliotta properly pointed out that a "paramount reason" for alimony is "to permit a wife to share in the economic rewards occasioned by her husband's income level (as opposed merely to assets accumulated), reached as a result of their combined labors, inside and outside the home." Id. at 164. The standard of living of married partners is attributable not only to the employed husband's economic productivity but to the nonemployed wife's work in keeping the home and raising the children. Ibid. The adultery in Gugliotta commenced while the parties were living together and resulted in the wife leaving the marital *338 home. In the present case the circumstances of the adultery were considerably less flagrant or outrageous. The extra-marital sexual relationship followed the husband's desertion; it did not precipitate the separation.
In affirming the trial court in Gugliotta this court recognized that fault may be a factor to be considered with all other pertinent factors in awarding alimony.[1] The trial court must consider the illicit affair in the context of the entire marriage relationship, Gugliotta v. Gugliotta, 164 N.J. Super. 139 (App. Div. 1978), not simply as an abstraction therefrom automatically compelling the punitive denial of all alimony.
In the opinion below the trial judge did discuss the wife's economic potential. 153 N.J. Super. at 383. In our appraisal of his opinion he did not consider this potential alone sufficient to preclude a present award of alimony to Mrs. Lynn. The tenor of that opinion convinces us that Mrs. Lynn was denied alimony solely because of post-separation adultery, not because of her economic prospects. At the time of the final hearing in September she was 39 years old and earning $50 a week publishing a newsletter. Additionally, she had worked five or six days that year as a substitute teacher earning $25 a day. She was taking a computer programming course one evening a week because there were no full-time teaching jobs available and she wanted to develop a marketable skill. There was never any contention that Mrs. Lynn benefitted economically from her post-desertion, extra-marital, sexual liaisons, thereby justifying a reduction or elimination of alimony therefor. See Wertlake v. Wertlake, *339 137 N.J. Super. 476, 486 (App. Div. 1975); Garlinger v. Garlinger, 137 N.J. Super. 56 (App. Div. 1975).
The matter is therefore remanded to the trial court for reconsideration on the issue of alimony for Mrs. Lynn in light of the principles discussed above.

II
The next economic issue involves the support of the three children of the marriage. The marital assets subject to equitable distribution totalled about $125,000 after anticipated taxes. These assets were essentially produced from the net proceeds of the sale of the marital home and Dr. Lynn's medical practice. The trial court decided that these assets should be distributed equally between the parties, a result which both accept for purposes of this appeal.
Mrs. Lynn's share of the equitable distribution was for the most part payable to her immediately, a portion being deferred until May 1979 because of uncertain tax consequences. Dr. Lynn's share was largely frozen in a trust in order to implement support for the children. The trial judge ruled that since he will be in residency until the summer of 1980, the trust should continue until December 31, 1980. The judge reasoned that Dr. Lynn would be reestablished professionally by that time and the support problem could then be reviewed. The parties have no other productive assets.
The trial judge ordered $125 a week support for each child until emancipated, a total of $375. The husband was ordered to pay $50 a week per child out of current earnings and $75 a week per child out of the trust fund. Annually, the order compels payment of child support of $7,800 out of Dr. Lynn's current earnings of $17,000, and $11,700 out of the approximately $62,000-plus income in the trust fund, a total yearly sum of $19,500.
On appeal Dr. Lynn argues that the child support order was excessive and that the creation of the trust fund has *340 resulted in an inequitable distribution of marital assets. At bottom his appellate contention appears to be premised on the argument that child support should be based on his current earnings only, and if not, Mrs. Lynn's capital assets should be made equally available to supplement the child support payments.
As we previously noted, the trial judge's conclusion that Dr. Lynn's mid-life alteration of career emphasis was made in good faith and not actuated by a malicious design to avoid his economic obligations is well-supported, despite Mrs. Lynn's understandable protestations to the contrary. However, the good faith of Dr. Lynn's motives does not automatically preclude reference to anything but current earnings in setting child support. We reject his contention that the court must find his alteration of economic circumstances to have been deliberately contrived to frustrate his support obligations before capital can be invaded to supplement child support payments out of current income. The controlling statute does not restrict the court to a consideration of current income alone but states that the court make such order for the care of the children "as the circumstances of the parties and the nature of the case shall render fit, reasonable and just, and require reasonable security for the due observance of such orders." N.J.S.A. 2A:34-23. In Mowery v. Mowery, 38 N.J. Super. 92 (App. Div. 1955), certif. den. 20 N.J. 307 (1956), Judge Goldmann reviewed the factors historically considered pertinent in child support:
The amount that may be allowed for the support of children obviously cannot be determined with absolute precision. Factors that have been taken into consideration have been the age and earning capacity of the child and whether it is in the custody of the mother, Streitwolf v. Streitwolf, 58 N.J. Eq. 570, 576, 45 L.R.A. 842 (E. & A. 1899), and cf. Davis v. Davis, 5 N.J. Super. 59 (App. Div. 1949); the ability of the parent to pay and the estate of the child, Greenspan v. Slate, 12 N.J. 426, 435 (1953); the father's financial resources. Goodrich v. Harrison, 9 N.J. Super. 382, 385 (Ch. Div. 1950); the mother's means, Pieretti v. Pieretti, 13 N.J. Misc. 98, 103, 176 A. 589 (Ch. 1935). [at 100].
*341 The following excerpts from the Mowery opinion disclose most aptly the unsoundness of Dr. Lynn's contention that child support must be based only on current earnings to the exclusion of other circumstances. As there stated:
This court has every right to appraise realistically defendant's potential earning power ... In treating the matter of support, our courts have always looked beyond the father's claims of limited resources and economic opportunity. They have gone far to compel a parent to do what in equity and good conscience should be done for his children. [at 102]
Mowery further observed that the same general considerations apply to both alimony and child support, noted that "No two cases were alike", id. at 104, and summarized the "well-settled rule" of Dietrick v. Dietrick, 88 N.J. Eq. 560, 561 (E. & A. 1918):
The husband's current income is the primary fund looked to, nevertheless his property and capital assets, `his capacity to earn the support awarded by diligent attention to his business  his earning capacity or prospective earnings'  are all proper elements for the court's consideration in fixing the amount of the award. [at 105]
There is no case before or after Mowery in our jurisprudence which holds that current earnings are the sole criterion to establish a party's obligation for support. We decline to so hold here, despite the absence of malevolent intent on Dr. Lynn's part.
We do not believe that Dr. Lynn's decision to change the course of his medical career should impact so abruptly upon his young children as to require their support to be gauged by an income of $110,000 in one year and $17,000 in the next. Our conviction is reinforced by the limited duration of the self-imposed period of diminished earnings  three years. If the family had remained intact and Dr. Lynn had altered his career course, we cannot believe that he would have resorted only to his current earnings of $17,000 for their support over his medical residency. Almost certainly savings *342 and capital would have been invaded during the interim to reinforce earnings and maintain some consistency of life style. One function of savings and capital in ordinary life  is the absorption of economic downturns, whether invited or uninvited. Savings and capital are not accumulated solely to provide income.
We view the use of the trust device here as a suitable arrangement to guarantee that child support which Dr. Lynn cannot be expected to pay out of current earnings. As the trial judge noted, the use of a trust is not novel. In Painter v. Painter, 65 N.J. 196, 212-213 (1974), our Supreme Court stated that a matrimonial judge should "view sympathetically a resort to the trust device, with its great flexibility." We observe that the trial judge permitted distribution of only $10,000 to Dr. Lynn from the trust assets of about $62,000. The balance was frozen until December 1980. Support payments from the trust for the three children over three years would not exceed $35,100 ($11,700 annually). Since the case must be remanded, we direct that the trial judge permit Dr. Lynn access to principal and income from the trust in excess of the $35,100 needed to support the children during the three years residency (plus any sums needed for tax contingencies and any amount of possible alimony which the court might wish to impose on the trust as a result of the remand on Point I). In view of the life-style and prior income of the family unit, and the anticipated short-lived period of Dr. Lynn's diminished earning capacity, we do not view the amount of child support as excessive on the particular facts of this case. However, because of the necessary interrelationship between property distribution, alimony and child support, the entire judgment may be considered reopened on the remand for such review as the trial judge deems appropriate in discharging his function. Id. at 218.
Dr. Lynn next contends that if the award of child support of $19,500 was not excessive the court at least should have impressed a trust, to some extent, upon Mrs. Lynn's assets, *343 because it is well-settled that both parents have an equal obligation to support their children, citing Turner v. Nooney, 21 N.J. Super. 522, 525 (App. Div. 1952); Cohen v. Cohen, 6 N.J. Super. 26, 29 (App. Div. 1949); Grotsky v. Grotsky, 58 N.J. 354, 356 (1971); Pieretti v. Pieretti, 13 N.J. Misc. 98, 103, 176 A. 589 (Ch. 1935); and, of course, Mowery v. Mowery, supra. This court stated in Cohen v. Cohen, supra 6 N.J. Super. at 30, that "the responsibility of father and mother is equal except as the circumstances of the particular case cast on one or the other the greater burden." And in Ionno v. Ionno, 148 N.J. Super. 259, 261-262 (App. Div. 1977), we stated "the obligation of support springs from the parental relationship and is affected only by the needs of the children and the means of the parents to fulfill the obligation."
In our view the trial judge gave no consideration to the possibility of invading Mrs. Lynn's assets to assist in providing child support during the three-year period of Dr. Lynn's markedly diminished earnings. In view of Mrs. Lynn's coequal legal obligation to support the children, we believe this factor should have been considered in light of all the relevant economic circumstances of the parties. In addition to the usually relevant economic circumstances we think a paramount consideration should be Dr. Lynn's ability to recoup his capital depletion when his specialty training is complete and his professional earnings rise, contrasted with Mrs. Lynn's realistic economic prospects for replenishing any capital she spends on interim child support. In addition, the trial judge should also consider any testimony relevant to the voluntary economic contributions, either in kind or in money expended, made by Mrs. Lynn consequent upon her status as the custodial parent, as being made towards the discharge of her duty of support. See Ionno v. Ionno, supra, 148 N.J. Super. at 262, where we stated a proper consideration "would include the fact that the plaintiff has the responsibility of the day-to-day care of the children."
*344 On remand, we therefore direct the trial judge to reconsider Dr. Lynn's contention that Mrs. Lynn's assets should also be resorted to in meeting the support requirements of the children, whether by trust arrangement or otherwise.

III
Dr. Lynn contends that the trial judge erred by including in the fund available for equitable distribution $27,200 due him from his medical firm, Hematology-Oncology Associates, for his interest in the accounts receivable and $12,500 received from the firm in 1976 representing deferred compensation from 1973. He contends that these sums are current income, not distributable assets of the marriage. Plaintiff contends they were assets acquired during the marriage and subject to distribution. We agree with Mrs. Lynn that the value of the accounts receivable of the medical firm at the time of sale was an asset of the marriage, as was any deferred compensation owed to Dr. Lynn from 1973. The accounts receivable are indistinguishable from any other distributable assets of the firm. The deferred compensation was a form of savings constituting marital property.
Dr. Lynn also challenges the trial judges' distribution of the personal property within the former marital home. The judge attempted to distribute the marital property equally between the parties with the exception of the personal property in the marital home, which was distributed on the "basis of need." We find nothing amiss about an overall 50/50 distributive scheme under the facts of this case. We stated in Gemignani v. Gemignani, 146 N.J. Super. 278, 284 (App. Div. 1977): "One of the parties cannot be denied an equitable allocation simply because the primary asset is not or should not be liquidated." This principle applies here. Even though the trial judge determined that the personalty within the home should not have been liquidated because of the necessities of Mrs. Lynn and the children, *345 he should have still engaged in the three-step procedure described in Rothman v. Rothman, 65 N.J. 219, 232 (1974), and determined what portion of the total value of these assets should be awarded to Dr. Lynn. He then should have allowed credit for a monetary sum representing Dr. Lynn's equitable share of those assets retained by Mrs. Lynn for reasons of necessity. Id. at 234. These steps should be executed on the remand.

IV
Mrs. Lynn on her cross-appeal contends that the trial judge erred mathematically in the order distributing the net proceeds from the sale of the marital home. We direct that the trial judge reconsider the distribution, taking into account not only the $78,700 disbursed in the final judgment but also the $14,550 paid out of the escrow account pursuant to his earlier orders and make such adjustments as are necessary to implement accurately the 50/50 distributive scheme he intended to accomplish.
Mrs. Lynn also contends that payments to her husband by his successor for shares of stock in the corporate medical practice should have been included in the total equitable distribution, even though made after the separation in April 1975. We agree with her contention. On remand the trial judge is accordingly directed to reconsider and adjust the equitable distribution in that respect. The sale of the stock in the corporate medical practice constituted a liquidation of a marital asset. Apparently at least some of this money, as well as some of the proceeds from the sale of the marital home, was used towards satisfaction of the pendente lite support order. If so, Dr. Lynn should not have been able to use a marital asset to defray support ordered from current earnings, and thereby defeat his wife's interest in the asset at the time of the equitable distribution.

*346 V
Mrs. Lynn was allowed the sum of $3,500 in counsel fees by the trial judge. Her attorneys' fees at the trial level totaled $18,500 as of the entry of judgment. Dr. Lynn's fees at the trial level, outlined in his affidavit seeking acceleration of this appeal, totaled $18,250. On her cross-appeal Mrs. Lynn asserts that the allowance of fees of $3,500 was inadequate. In view of our reversal on the issue of alimony and support, we direct the trial judge reconsider Mrs. Lynn's application for fees on remand and determine in light of this opinion and all other circumstances whether he considers an award totaling about 19% of her actual fees adequate under the applicable cases. Williams v. Williams, 59 N.J. 229, 233 (1971); Shaffer v. Shaffer, 154 N.J. Super. 491, 494 (App. Div. 1977); Lavene v. Lavene, 148 N.J. Super. 267, 277 (App. Div. 1977). The judge on remand should make specific findings and give reasons for the amount of counsel fees awarded, especially in relation to plaintiff's needs and ability, defendant's ability and plaintiff's good faith in instituting and litigating the action, and the judge may consider additional expenditures for fees, if deemed by him necessitated, as alleged by Mrs. Lynn, by defendant's recalcitrance in obeying court orders. Reversed and remanded; jurisdiction is not retained.
NOTES
[1] The "long-standing tests" for equitable alimony were listed in a pre-Chalmers opinion, Greenberg v. Greenberg, 126 N.J. Super. 96, 100 (App. Div. 1973), as follows: "(1) the actual needs of the wife; (2) the husband's actual means and his ability to pay support; (3) the physical condition of the parties; (4) their social position; (5) the separate property and income of the wife; and (6) any other factors which bear upon the question of fair and reasonable support."