OF

## THE STATE OF NEW JERSEY.

### OCTOBER TERM, 1902.

WILLIAM J. MAGIE, ORDINARY.

ALFRED REED, VICE-ORDINARY.

In the matter of the estate of EVA· RUSSELL, deceased.

[Filed October 28th, 1902.]

1. The provisions of section 29 of the Orphans Court act of 1898 confer jurisdiction upon the surrogate over the grant of letters of administration on the estate of persons who have died non-residents of this state. A contest over the right of administration will not oust his jurisdiction or confer jurisdiction in the first instance, on the orphans court, as in the case of deceased residents of the state, under the provisions of section 26 of that act.

2. The foreign residence of a decedent at death is a jurisdictional fact, essential to the jurisdiction of the surrogate under section 29. If persons

in interest deny the foreign residence and assert a residence in this state, the surrogate is impliedly authorized to determine the residence, subject to an appeal to the orphans court under section 201 of that act.

3. The residence of an infant born in New Jersey, of parents resident here, is presumed to continue a residence in this state, until proof is adduced that it has been lawfully changed. The infant's residence will follow that of the father while he is living. After the father's death, it will, in general, follow that of the mother. The residence of an infant existing in this state at the death of the father will not be shown to be changed, by proof that the mother afterward took the infant with her to a foreign state, unless it appears that the change of abode was the intent, on the part of the mother, to abandon the residence in New Jersey, and acquire residence in the foreign state, *animo manendi*.

On appeal from a decree of the Cumberland county orphans court, made March 31st, 1902, appointing Howard Carrow administrator of the estate of Eva Russell, deceased.

*Mr. Walter H. Bacon,* for the appellants.

*Mr. Howard Carrow, pro se.*

MAGIE, ORDINARY.

The transcript discloses that the decree appealed from was made by the orphans court under the following circumstances: On February 17th, 1902, Howard Carrow presented to the surrogate of Cumberland county a petition averring that on October 25th, 1901, Eva Russell, an infant of the age of twelve years, had died intestate, in the city of Philadelphia, in the State of Pennsylvania, being then an inhabitant and resident of that state; that the deceased possessed no estate, except the sum of $10,000 bequeathed to her by her grandfather, who died in Cumberland county, and that her said legacy was in the possession of the Cumberland Trust Company, which was her guardian; that, under the law of Pennsylvania, Mary Russell, mother of the said deceased, was the sole beneficiary and distributee of the estate of the deceased and entitled to administer upon such estate, but that she had renounced such right of administration in favor of petitioner; and that thereafter, on December 31st, 1901, upon his said application, the register of wills in Philadelphia had

granted to petitioner letters of administration upon the estate of the deceased infant, exemplified copies of the proceedings in Philadelphia being appended to the petition. Petitioner thereupon prayed that administration of the estate of the deceased should be granted by the surrogate of Cumberland county, by ancillary letters or such other letters as should be proper.

On February 20th, 1902, the Cumberland Trust Company, as guardian of Florence S. Russell and Goldie Russell, minors and sisters and next of kin of Eva Russell, deceased, presented to the surrogate a caveat against his granting letters of administration to Howard Carrow upon the estate of the deceased until his right and claim should be determined by the orphans court of Cumberland county.

The transcript does not contain any citations, but it appears thereby that on March 3d, 1902, the orphans court, on motion of counsel appearing for the caveators, made a rule reciting that the citations had been returned, and fixing a day for hearing the matter.

The court thereafter took the testimony of witnesses, and thereupon made the decree complained of.

The first question presented for consideration relates to the jurisdiction of the orphans court to make the decree complained of under the circumstances appearing before it.

If the application to the surrogate had been for letters of administration upon the estate of a deceased person who was a resident of his county at the time of his death, the surrogate was empowered to grant such letters; but if a caveat had been put in before him, such as appears in this case, his jurisdiction would have been limited to the issuing of citations returnable into the orphans court, to which court jurisdiction of the matter is expressly granted, for such a caveat would raise a dispute as to the administration, and, by the provisions of section 26 of the act entitled "An act respecting the orphans courts, and relating to the powers and duties of the ordinary and the orphans courts and surrogates" [Revision of 1898], approved June 14th, 1898, the orphans court is to hear and determine a controversy of that nature. *P. L. of 1898 p. 715.*

By the provisions of section 2 of the act above cited the juris-

diction conferred on the orphans court to hear and determine controversies respecting administration is limited to cases "as hereinafter directed." It does not admit of doubt that the jurisdiction of the orphans court does not arise in respect to the right of administration except upon a dispute appearing, which ousts the surrogate of his jurisdiction, and confers it upon that court.

By the provisions of section 29 of the same act authority is conferred upon the surrogate of a county to issue letters of administration upon the estate of a deceased person who died, not a resident of this state, but possessed of personal property within said county, upon application and proofs, to the surrogate's satisfaction, that the decedent died intestate. The requirement is that such letters shall issue to the administrator of the decedent, or to any person who would be entitled to administration in case decedent had resided in this state at the time of his death. If application is made by anyone not an administrator of decedent, the letters are only to be granted upon such notice to the administrator as the surrogate may prescribe.

It is to be noted that there is no provision in this section empowering the surrogate, upon such application, in case the right of administration is disputed, to issue citations to the parties interested, returnable into the orphans court, and thereupon conferring upon that court jurisdiction to hear and determine the controversy thus raised, such as is contained in section 26, relating to administration upon the estates of deceased residents of this state.

Before the revision of 1898 the grant of administration on the estate of a deceased non-resident was given by the provisions of section 29 to 31 of the Orphans Court act of March 27th, 1874 (*Rev. Stat. of 1874 p. 500*), and the amendment to section 29, embraced in a supplement of February 9th, 1880. *Gen. Stat. p. 2400.* By section 30 authority was given to the ordinary or a surrogate to grant letters of administration on the estate of a deceased person who did not reside in the state at the time of his death whenever it was necessary or desirable to do so, and whenever a rule to show cause why such letters should not be granted was shown to the surrogate to have been published as required by him. This act did not provide for the issuing of

citations in the case of a dispute as to the right of administration, nor did it confer any jurisdiction upon the orphans court.

In *Plume, Administrator,* v. *Howard Savings Institution, 17 Vr. 211,* the action was to recover from the savings institution a deposit made by one McMahon, of whom the plaintiff, Plume, had been appointed administrator by the orphans court of Essex county, upon proof that McMahon had been absent from the state and not heard from for the period of seven years, so that the presumption of his death had been created by the statute. The decree of the orphans court was held by the supreme court to be incapable of being called into question in a collateral proceeding, it appearing that it was made upon proofs presenting to the orphans court a colorable case of the decease of McMahon and as to his residence. The case discloses that the proceeding for the appointment of an administrator had been initiated by a petition for administration, addressed to the surrogate of Essex county, and that the surrogate had ordered a rule to show cause why the application should not be granted, returnable before the orphans court, and that the orphans court proceeded thereon to hear and determine the matter. The elaborate briefs of counsel indicate that, among other matters presented, it was contended that the orphans court of Essex county was without jurisdiction to act, because the last place of residence of McMahon in this state was shown to have been in another county, and also that it was equally without jurisdiction if the proofs showed that McMahon had died, or was presumed to have died, when a nonresident of this state. Upon these contentions, Chief-Justice Beasley, speaking for the court, said: "In the present case there was plainly some proof of the death of the supposed intestate, and likewise of the fact that he was not, at the time of his decease, a resident of this state, and therefore, even if the court fell into error, which I do not intend to indicate, such error might have led, in a proper course of law, to a reversal of the judgment, but it can have no bearing against the right of the court to adjudicate upon the facts before it." In another part of the opinion he uses the following language: "And with respect to the present inquiry, it matters not at all whether the clause of the statute that regulates the proceedings on applica-

tions for authority to administer the estates of non-resident de-
cedents was rightly construed by the orphans court, inasmuch if
an error exists in that particular, it cannot be corrected except
in a direct appellate review." It is therefrom obvious that the
decision in that case in no respect involves the question here
presented, where there is an application to review a decree of the
orphans court, jurisdiction to make which is directly challenged
by the appeal.

The orphans court is not a court of general, but of limited,
jurisdiction, which is confined to such matters as the statute
either expressly or by clear implication has conferred jurisdic-
tion over.

When the statute expressly provides, in respect to applications
for administration upon the estates of deceased persons who, at
their death, were residents in this state, a particular course of
practice, and, by express words, grants jurisdiction to the or-
phans court, and, in the same connection, gives authority to a
surrogate, in respect to applications for administration upon the
estates of deceased persons who were not, at their death, residents
of this state, and refrains from giving any authority to the
orphans court to deal with such an application, I think it is clear
that there can be no implication that authority has been con-
ferred upon that court in the latter class of cases. The former
class are within the provisions of section 2, because of the direc-
tions contained in section 26; the latter class do not fall within
the provisions of section 2, because there is no direction respect-
ing controversies in cases of that class.

It results, in my judgment, that the decree appealed from was
not within the jurisdiction of the orphans court.

This result, in my judgment, does not prevent a contest re-
specting the right of an applicant to obtain letters of adminis-
tration from the surrogate upon such a petition as was presented
in this case, when the contest is grounded, as here, upon an
allegation that the deceased was not, at death, a resident of the
foreign state in which letters of administration had been granted,
but was, in fact, a resident of this state.

The caveator, before the surrogate, was shown to have been
duly appointed the guardian of the persons and property of two

Russell's Case.

infant sisters of the deceased child. If, at the time of her death, the decedent was a resident of New Jersey, and her mother renounced the right of administration on her estate, upon a proper application, administration would have been granted to a proper person for said infants, *durante minore aetate*. Moreover, if the decedent was resident here at the time of her death, her sisters would be entitled to distributive shares of her estate, while the petition asserts that in the state in which letters were issued the mother becomes entitled to the whole of the estate of the decedent. It is obvious that the interest of the infant sisters of the decedent was involved in, and might be prejudiced by, the action of the surrogate upon the petition.

It is not supposable that in this, and, perhaps, other cases of similar nature, the legislature intended to omit to provide an opportunity for a contest involving such interests. While no express authority is given by the act to the orphans court to determine such a contest in the first instance, and I have not been able to find sufficient implication of authority in that court to proceed by the course specially provided under section 26, yet I think there is a clear implication that such a contest may be heard and determined in the first instance by the surrogate. For while section 29 expressly declares that, upon application and proof that the deceased died intestate, the surrogate *shall* issue letters, yet it is clear that the fact of the non-residence of the decedent is jurisdictional. The authority conferred is to issue letters only on the estate of a non-resident. A contest as to residence may, therefore, be raised before the surrogate, which he must determine before acting. From this determination an appeal to the orphans court will at least lie in favor of any person aggrieved, under the provisions of section 201 of the same act.

Respondent urges that appellant may not object to the jurisdiction of the orphans court in this case, because, by its caveat, it invoked that court to exercise such jurisdiction. But if jurisdiction to act in the first instance had not been conferred on that court, the consent of appellant would not confer it. Nor does it seem to me that the jurisdiction to hear and determine

such a controversy on appeal will justify the appellate court in acting, not by appeal, but in the first instance.

If I was of a different opinion, I should be unable to conclude that there was jurisdiction to issue the letters in question, because, upon the evidence, I think the deceased child was shown to have been, at death, a resident of New Jersey. It was made to appear that she was born in New Jersey, on November 10th, 1889, of parents then resident here. What the books call her domicile of origin was in New Jersey. Domicile thus acquired continues until there is proof made that it has been actually changed. A minor may not change the domicile, at least before emancipation. *Blumenthal* v. *Tannenhole, 4 Stew. Eq. 194.* As decedent died before she attained the age of twelve years, and while remaining in the charge of her mother, it is clear that she had not been emancipated. The domicile of the infant follows that of its father during the lifetime of the father. *Jac. Law Dom.* § *235.* Decedent's father remained a resident of New Jersey until his death, in 1892.

After the death of a father the domicile of an unemancipated infant, in general, follows that of the mother. *Jac. Law Dom.* § *238; Johnston* v. *Beattie, 10 Cl. & F. 42; Sharpe* v. *Crispin, L. R. 1 P. & D. 611; Lamar* v. *Micou, 112 U. S. 452; Dedham* v. *Natick, 16 Mass. 135; Brown* v. *Lynch, 2 Bradf. 214.*

Whether the domicile of an infant may be changed by the mother with intent to benefit herself thereby; whether the change of domicile is constructively fraudulent when it benefits the mother in succession to the infant's estate; or whether such a change will deprive the mother of the right of administration, or only prevent an improper distribution of the infant's estate, are questions on which authorities are not in entire accord. *Jac. Law Dom.* § *242 et seq.* They are questions not necessary to be settled on this appeal.

Nor is it necessary to settle herein whether the mother may, after the father's death, change the domicile of an infant, without the consent, or against the objection, of a duly-appointed guardian of the infant's person.

I have assumed, for the purposes of this case, that the mother had a complete right to change the domicile of the infant. Such

Russell's Case.

a change, however, could only be effected by the mother's changing her own domicile, for the infant's domicile follows that of the parent. The question, then, is whether the evidence shows a change of domicile of the mother from New Jersey to Pennsylvania. The infant's father died in Cumberland county in 1892, and his widow, the mother of decedent, continued to live in that county, with her children, until some time in the year 1898, when they went to Camden, in this state, and continued to live there until February, 1899. They then went to Philadelphia, and lived, in three different places, in that city until May, 1900. There is not a syllable of evidence that the mother took her residence in Philadelphia, *animo manendi*. If the evidence justified any inference on that subject or to that effect, it is negatived by the fact that, in May, 1900, she returned, with her children, to New Jersey, and continued to live there until March, 1901. If a like inference could be drawn from the evidence, the domicile of the mother, and consequently that of the infant, was resumed in New Jersey.

In March, 1901, the mother, with her children, went to Philadelphia, and continued to live there until the death of the decedent, in October of that year. Was that change of residence a change of domicile? To make it such it must appear that there was, on the part of the mother, an *animus manendi*. *Harral* v. *Harral, 12 Stew. Eq. 279; Firth* v. *Firth, 5 Dick. Ch. Rep. 137; Hervey* v. *Hervey, 11 Dick. Ch. Rep. 166; S. C., 11 Dick. Ch. Rep. 424.* On the question of her intent there is absolutely no direct evidence, and the circumstances proved do not, in my judgment, justify any inference that her purpose in going to Philadelphia was to make it her permanent home. Her previous return to New Jersey rather justifies a contrary inference.

If, therefore, this appeal brings in question the conclusion of the orphans court on the merits of the case, I think it is not supported by the evidence.

The order appealed from must be reversed.