924 A.2d 465

EZRINA SHIM, PLAINTIFF–RESPONDENT, v. RUTGERS–
THE STATE UNIVERSITY OF NEW JERSEY,
DEFENDANT–APPELLANT.

Argued January 29, 2007—Decided June 14, 2007.

376

*Gavin J. Rooney* argued the cause for appellant (*Lowenstein Sandler PC,* attorneys; *Mr. Rooney and Kathleen A. Walsh,* on the briefs).

*H. Justin Park* argued the cause for respondent (*Schnader Harrison Segal & Lewis LLP,* attorneys).

Justice LONG delivered the opinion of the Court.

In 2003, eighteen-year-old Ezrina Shim applied for admission to Rutgers University (Rutgers) for the fall term. At the time, she

had lived in New Jersey for four years and therefore was presumed, under *N.J.S.A.* 18A:62–4, to be a domiciliary for the purpose of in-state tuition. Under Rutgers' reading of the applicable administrative regulation, *N.J.A.C.* 9A:5–1.1(f), Shim was subject to a counter-presumption of non-domiciliary status solely because of her financial dependence on her out-of-state parents. Rutgers only considered evidence bearing on that financial dependence in deciding Shim's case. Because Shim could not establish that she was financially independent of her parents, her application for in-state tuition was denied. Shim appealed and the Appellate Division reversed and remanded the case to Rutgers for reconsideration of all of the evidence to determine whether the presumption of non-domicile had been overcome and whether she, in fact, established that she was domiciled here. We now affirm, although on different grounds.

We hold that, pursuant to the legislative scheme of *N.J.S.A.* 18A:62–4, a student who has lived in New Jersey for twelve months prior to enrollment is presumed to be a domiciliary for tuition purposes. If that student is, in fact, dependent on out-of-state parents, that dependence creates a genuine issue regarding domicile and the presumption in her favor is neutralized. However, that does not give rise to the contrary presumption that she is a non-domiciliary. Rather, she is neither presumed a domiciliary nor presumed a non-domiciliary. Rutgers must then fully, fairly, and dispassionately consider *all* submitted evidence, including but not limited to evidence of the student's dependence on out-of-state parents. If a preponderance of the evidence indicates that the student's domicile is in New Jersey then it must classify her as a domiciliary for in-state tuition purposes.

I.

Ezrina Shim was born in Montgomery County, Pennsylvania on November 5, 1984. Sometime later, Shim left the United States with her parents and settled in Korea. In August 1999, she moved back to the United States to live with her aunt and uncle,

the Parks, in Mount Laurel, New Jersey. Her parents remained in Korea.

While living with Mr. and Mrs. Park, Shim attended four years of high school in Mount Laurel. She also obtained a New Jersey driver's license; acquired and registered an automobile in New Jersey; opened a bank account in this State; worked several jobs here; filed New Jersey personal income tax returns; and registered to vote in Burlington County. In addition, Shim forged several meaningful social relationships in and around the State.

Since 1999, Shim has resided continuously in Mount Laurel with her aunt and uncle, visiting her parents in Korea only twice: for six weeks in the summer of 2000 and for three weeks in the summer of 2002. She has represented to others that she considers New Jersey her home and has no intention of returning to live in Korea. She does not speak Korean fluently, and has no meaningful social life or close friends in Korea.

In September 2003, Shim, then eighteen years old, enrolled as an undergraduate student at Rutgers. Prior to enrollment, the Admissions Office determined that Shim was not a resident of this State for tuition purposes because she was a dependent student whose parents were not domiciled here. Shim, however, claimed residency based on her living arrangement with her aunt and uncle.

As a result, Rutgers contacted Shim by letter in March 2003 to determine whether she had a claim for in-state tuition. The letter asked whether Mr. and Mrs. Park were Shim's legal guardians and requested that Shim complete a Residency Analysis Form (RAF). When Shim did not respond to that initial communication Rutgers sent her another letter, dated June 17, 2003, requesting the same information. Having received no immediate response, on July 11, 2003, Rutgers issued Shim a tuition bill for the fall of 2003, charging her the higher tuition rate for an out-of-state resident.

On July 30, 2003, Dennis Lim, Shim's youth pastor at Emmanuel Church in Philadelphia, sent Rutgers a letter attesting that he had known Shim for three years and that during that time she had resided with her aunt and uncle in Mount Laurel, New Jersey. Lim also noted that, to his knowledge, "Ezrina has no interest[ ] in returning to Korea after she graduates from college" and "her life is here in the United States, not in Korea."

Upon receipt of Lim's letter, Rutgers again asked whether Mr. and Mrs. Park were Shim's legal guardians and requested that Shim complete the RAF. Rutgers also indicated that if Mr. and Mrs. Park were Shim's legal guardians, they should submit documentation supporting their claim to be New Jersey domiciliaries.

Shim responded on November 8, 2003, after she had enrolled but within the timeframe specified by Rutgers in its Policy Statement on Student Residency for Tuition Purposes. In her response, Shim formally requested a change of residency status and enclosed a partially-completed RAF.

On her RAF, Shim indicated that she had moved to New Jersey "to live permanently in the United States." She also claimed that she hoped to finance her college expenses through financial aid.[1] Shim did not claim to be financially independent, a dependent of a New Jersey resident parent or legal guardian, or a spouse of a New Jersey resident. Consequently, she did not complete Parts II and III of the RAF, which, per the form's instructions, are to be filled out by the financially independent student, his/her spouse, or the New Jersey resident parent or legal guardian of a dependent student. In support of her claim, however, Shim submitted an "Enclosures List" with fourteen documents,[2] a "Description of

---

[1] Shim did indeed fund some of her college expenses through financial aid, but also received financial support from her parents.

[2] The enclosures were: (1) Shim's birth certificate; (2) passport; (3) high school transcript; (4) driver's license; (5) Motor Vehicles Certificate of Title; (6) voter registration card; (7) original memo from Commerce Bank confirming Shim's account; (8) 2002 federal income tax return; (9) 2002 New Jersey state

Facts" detailing her relationship to New Jersey, and an "Argument" which she later supplemented with an addendum.

Shim set out the basis for her request for in-state tuition in her "Argument." There, she noted that under *N.J.S.A.* 18A:62–4, all students who are domiciled in New Jersey are entitled to in-state tuition rates, and individuals who have lived in the state for twelve months prior to enrollment in a public university are presumed domiciliaries. As Shim had lived in the state for over four years before her enrollment at Rutgers, she argued that she should have been presumed eligible for, and received, in-state tuition rates.

In arguing, Shim recognized that *N.J.A.C.* 9A:5–1.1(f) establishes a counter-presumption that dependent students with parents domiciled outside of the state are non-domiciliaries for tuition purposes. According to Shim, that regulatory presumption conflicts with the above-mentioned legislative presumption and therefore should be set aside. Alternatively, Shim argued that even if the two presumptions did not directly conflict, the administrative regulation should be declared void as an unauthorized exercise of agency power.

Finally, Shim claimed that she had rebutted the regulatory presumption of non-domicile and proved her domicile through the documentary evidence she provided with her RAF. As a legal adult, Shim contended that she possessed the capacity to choose her own domicile and had submitted evidence sufficient to show that (1) she is physically present in New Jersey and (2) intends to remain here. Accordingly, Shim maintained that Rutgers should have acknowledged her as a domiciliary and granted her in-state tuition rates.

---

income tax receipt; (10) 2002 Form W–2 reflecting New Jersey earnings; (11) 2003 Form W–4 and 2003 Form NJ–W4 reflecting New Jersey earnings; (12) Mount Laurel Board of Education pay stubs; (13) 2003 Form W–4 and 2003 Form NJ–W4 reflecting New Jersey earnings; and (14) letters of support, sent under separate cover.

On December 4, 2003, Rutgers' Admissions Office rejected Shim's request for in-state residency status.[3] In its letter, Rutgers explained that *N.J.A.C.* 9A:5–1.1 and 9A:9–2.6 mandate that an undergraduate student is presumed to have the residency status of her parents, unless the student proves that she is "independent" as defined in the Policy Statement and the state regulations. Because Shim never claimed that she was "independent," and provided no evidence to that effect, Rutgers continued to presume that she was a non-resident of New Jersey for tuition purposes.

Further, Rutgers noted that the evidence Shim provided was "of residence in New Jersey for the sole purpose of attending school," and that fact plus "a presence in the state [was], in and of itself, insufficient to establish residence for the purpose of in-state tuition." In essence, Rutgers found that Shim's residence in the State for twelve months prior to enrollment was irrelevant to its domicile determination because it was unrelated to the "controlling provision in [the] case," namely that Shim is a dependent student on out-of-state parents and thus presumed to be a non-domiciliary for tuition purposes.

Shim timely appealed that decision through Rutgers' administrative process. Her appeal was denied at every stage for the same reasons that Rutgers had previously stated. In addition, Rutgers added that a dependent student can overcome the presumption of shared domicile "if the student has special and unusual family circumstances that have resulted in a condition of financial independence." According to Rutgers, Shim had not shown she had established her own domicile in New Jersey because "a student who remains financially dependent upon his or her parents has not truly severed the bonds which connect that student to the parents' home."

---

[3] Around that time, the Admissions Office also received letters of support on behalf of Shim from: her high school counselor (received on November 29, 2003); her uncle, Mr. Gihong Park (received on December 17, 2003); and her Sunday School teacher at Emmanuel Church (received December 20, 2003).

Having exhausted her administrative appeals, Shim, represented by counsel, filed a complaint in lieu of prerogative writs in the Superior Court, Law Division,[4] seeking a declaratory judgment that she was an in-state resident for tuition purposes. Shim also sought to be reimbursed for tuition overcharges for the 2003–2004 academic year. Shim and Rutgers filed cross-motions for summary judgment. After oral argument, the trial judge granted Rutgers' motion.

Shim appealed and, in a split decision, the Appellate Division held that Rutgers' denial of Shim's application for in-state residency status was arbitrary and capricious because it was based upon an erroneous application of the relevant regulatory standard. *Shim v. Rutgers*, 385 *N.J.Super.* 200, 203, 896 *A.*2d 1118 (App.Div. 2006). The panel remanded the case to Rutgers to consider the totality of the evidence in determining whether Shim had overcome the regulatory presumption of non-domicile and established entitlement to in-state tuition. Because there was a dissent in the Appellate Division, Rutgers now appeals to this Court as of right. *R.* 2:2–1(a)(2).

## II.

Rutgers argues that its decision was based upon substantial evidence in the record and was neither arbitrary, unreasonable, nor capricious; that the regulations that establish a presumption of non-domicile are fully consonant with the statute; and that Shim was correctly classified as a dependent of her parents in Korea, thus rendering her legally ineligible for in-state tuition.

---

[4] Given our recent holding in *Infinity Broadcasting Corp. v. New Jersey Meadowlands Commission*, 187 *N.J.* 212, 225, 901 *A.*2d 312 (2006), and Rutgers's status as "an instrumentality of the State for the purpose of providing public higher education," *Lipman v. Rutgers–The State Univ. of N.J.*, 329 *N.J.Super.* 433, 441, 748 *A.*2d 142 (App.Div.2000), it is clear that an appeal from a final decision by Rutgers in respect of a student's domicile must lie in the Appellate Division pursuant to *R.* 2:2–3(a)(2).

Shim reiterates her contentions that the regulatory presumption of non-domicile is *ultra vires;* that financial dependence cannot be dispositive of domicile; and that she has satisfied the standards necessary to be afforded an in-state tuition rate.

## III.

Our role in reviewing an administrative agency's final decision is limited. *In re Taylor,* 158 *N.J.* 644, 656, 731 *A.*2d 35 (1999). We will not reverse an agency's decision unless: (1) it was arbitrary, capricious, or unreasonable; (2) it violated express or implied legislative policies; (3) it offended the State or Federal Constitution; or (4) the findings on which it was based were not supported by substantial, credible evidence in the record. *Ibid.*

Generally, courts afford substantial deference to an agency's interpretation of a statute that it is charged with enforcing. *R & R Mktg., L.L.C. v. Brown–Forman Corp.,* 158 *N.J.* 170, 175, 729 *A.*2d 1 (1999). An appellate court, however, is "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." *In re Taylor, supra,* 158 *N.J.* at 658, 731 *A.*2d 35 (quoting *Mayflower Sec. Co. v. Bureau of Sec.,* 64 *N.J.* 85, 93, 312 *A.*2d 497 (1973)). That is the standard of review against which this dispute must be assessed.

## IV.

For over a century, New Jersey has afforded residents more favorable tuition rates at state institutions than their non-resident counterparts. *See, e.g., L.* 1903 (2d Sp.Sess.), c. 1 § 190; *L.* 1932, c. 217, § 1; *N.J.S.A.* 18A:64–13. Prior to 1979, the regulatory standard that governed in-state tuition eligibility was absolute—only twelve months residency in New Jersey prior to enrollment would suffice. *See, e.g., N.J.A.C.* 9:5–1.1 (1973) (amended by 12 *N.J.R.* 661(a) (changing regulation in light of passage of *N.J.S.A.* 18A:62–4); expired on April 1, 1996 pursuant to Executive Order No. 66 (1978)).

In 1979, the Legislature enacted *N.J.S.A.* 18A:62–4, the statute at issue here. It provides:

> Persons who have been resident within this State for a period of 12 months prior to enrollment in a public institution of higher education are presumed to be domiciled in this State for tuition purposes. Persons who have been resident within this State for less than 12 months prior to enrollment are presumed to be nondomiciliaries for tuition purposes. Persons presumed to be nondomiciled or persons who are presumed to be domiciled, but whose domiciliary status is challenged by the institution, may demonstrate domicile according to rules and regulations established for that purpose by the Commission on Higher Education. Residence established solely for the purpose of attending a particular educational institution is not domicile for the purposes of this act.
>
> [*N.J.S.A.* 18A:62–4.]

The Senate Education Committee statement to the bill that became *N.J.S.A.* 18A:62–4 identified its core purpose:

> Present law requires that a student be a resident for 12 months prior to enrollment. The State Board of Higher Education cannot make an exception to this regulation. This penalizes individuals who have moved to New Jersey and established legal domicile less than a year prior to a student's enrollment in college. Under this bill, the State Board of Higher Education could make an exception for individuals who can demonstrate that they are legally domiciled in New Jersey.
>
> [Senate Education Committee, *Statement to Senate Bill No. 1387,* at 1 (February 20, 1979).]

That legislative history is critical to any analysis of the statute. It underscores that in enacting *N.J.S.A.* 18A:62–4, the Legislature had no intention of making it more difficult for a student who had actually resided here for a year prior to enrollment to establish in-state status for tuition purposes. Instead, that statute was enacted to broaden the class of students who might qualify for in-state tuition by softening the prior bright line rule of twelve-months residency. It is against that backdrop that we must interpret the statute.

## V.

A student seeking in-state tuition bears the burden of proving that she is domiciled here. Apropos of that obligation, in enacting *N.J.S.A.* 18A:62–4, the Legislature established, as the statute's point of departure, a set of presumptions regarding domicile.

### A.

Unlike an inference, which is a conclusion that may be drawn from a proven fact, a presumption is a conclusion that the law directs must be drawn. *State v. Corby,* 28 *N.J.* 106, 114, 145 *A.*2d 289 (1958), *overruled on other grounds by State v. Taylor,* 46 *N.J.* 316, 217 *A.*2d 1 (1966). Put another way, a presumption is a mandatory inference that discharges the burden of producing evidence as to a fact (the presumed fact) when another fact (the basic fact) has been established. *N.J.R.E.* 301; *Ahn v. Kim,* 145 *N.J.* 423, 438–39, 678 *A.*2d 1073 (1996). In essence, a presumption has the effect of compelling a particular conclusion in the absence of contrary evidence. To overcome a presumption, evidence that "tends to" disprove the presumed fact, thereby raising a debatable question regarding the existence of the presumed fact, must be adduced. *Ahn v. Kim, supra,* 145 *N.J.* at 439, 678 *A.*2d 1073. If reasonable people would differ regarding the presumed fact, the presumption is overcome. *See N.J.R.E.* 301 (stating rebuttal of presumed fact sends issue to trier of fact unless reasonable persons would not differ as to existence or nonexistence of presumed fact); *Harvey v. Craw,* 110 *N.J.Super.* 68, 73, 264 *A.*2d 448 (App.Div.) (same), *certif. denied,* 56 *N.J.* 479, 267 *A.*2d 61 (1970).

However, the production of evidence that creates a debatable question and thus rebuts a presumption does not preclude the possibility that the presumed fact may nevertheless be true. *See Ford Motor Co. v. Edison Twp.,* 127 *N.J.* 290, 312, 604 *A.*2d 580 (1992) (stating once presumption is overcome fact question must be decided based on preponderance of evidence adduced by both parties). The trier of fact should thus consider all of the evidence in resolving the question at issue. *Ibid.*

### B.

Under *N.J.S.A.* 18A:62–4, twelve months residence in New Jersey is the basic fact that the Legislature has said establishes the presumed fact of domicile. Accordingly, length of residence is the preliminary inquiry. If the twelve-month stan-

dard has been satisfied, there is a mandatory inference that the student is a domiciliary. If not, there is a contrary mandatory inference that the student is a non-domiciliary.

█ At that point, the institution has two choices: it can either accept the student's presumed domicile, or it can challenge that status.[5] The gravamen of such a challenge is found in the last sentence of *N.J.S.A.* 18A:62–4, which declares that "[r]esidence established solely for the purpose of attending a particular educational institution is not domicile for the purposes of this act." In other words, the Legislature itself has declared that residence in New Jersey solely for the purpose of obtaining admission and in-state tuition at a state college or university will not satisfy the statute. Accordingly the institution may challenge a student who has lived here for more than twelve months on that basis.

Upon such a challenge, *N.J.S.A.* 18A:62–4 declares that the student, like her presumptively non-domiciled counterparts, "may demonstrate domicile according to the rules and regulations established for that purpose by the Commission on Higher Education." Thus, the student, who is in the best position to do so, has the burden of producing the evidence enumerated in the applicable regulations. In particular,

(a) For the purposes of *N.J.A.C.* 9A:5–1.1, a student may present and/or an institution may require the following as primary evidence of being domiciled in New Jersey:

1. Copies of the student's New Jersey income tax return or evidence of withholding of New Jersey income tax, and/or copies of the parent's(s') or legal guardian's (s') income tax return or evidence of withholding of income tax.

2. Evidence of ownership of or a long-term lease on a permanent residence in this State by the student or the student's parent(s) or legal guardian(s).

(b) A student may present and/or an institution may require supplementary evidence of being domiciled in New Jersey, which may include the following:

1. A New Jersey driver's license;

2. A New Jersey motor vehicle registration;

3. A New Jersey voter registration card;

---

[5] Obviously if the presumption is of non-domicile, it will be the student who is the challenger.

4. A sworn, notarized statement from the student and/or his or her parent(s) or legal guardian(s) declaring domicile in New Jersey;

5. Any other supplementary evidence that the institution deems necessary to support the student's claim of domicile in New Jersey, including, but not limited to, evidence regarding the domicile of a student's parent(s) or legal guardian(s) for students whose domicile is determined by the institution to be with their parent(s) or legal guardian(s).

(c) If primary evidence of domicile is not available due to the loss or destruction of records or other unusual circumstances, the institution may make a determination based exclusively on supplementary evidence.

(d) In every instance, the institution shall keep with the student's records copies of the evidence it used in determining domicile pursuant to this section.

[*N.J.A.C.* 9A:5–1.2.]

██ However, the mere fact that a student has been challenged does not negate the presumption of domicile. Nothing in the statutory language suggests, even obliquely, that the mere existence of a challenge by an institution vitiates that presumption. The student remains clothed in the presumption until evidence is adduced that is sufficient to overcome it. Once it is overcome, the student bears the burden of persuading the trier of fact, without the benefit of the presumption and on the basis of all the evidence, that "her true, fixed, permanent home and principal establishment" is in New Jersey and "whenever ... she is absent, ... she has the intention of returning." *See N.J.A.C.* 9A:5–1.1(a) (defining domicile). That is the paradigm for our inquiry.

## VI.

Rutgers first argues that Shim's residence in New Jersey as a minor does not count toward domicile, and therefore the statute defines her as presumptively non-domiciled. However, the language of the statute does not support that argument. It states that "*persons* who have been *resident* " in New Jersey for a year or more are entitled to the domicile presumption. Indeed, the Senate Education Committee specifically substituted the term "resident" for the term "domiciled" in an amendment to the statute prior to its passage. The Committee did so in order to "make it clear that the intent of the change is to presume persons who have been resident for 12 months as domiciled for purposes of

tuition." *Statement for Senate Amendments to Senate Committee Substitute for Senate No. 1387,* Adopted May 7, 1979. In short, the Legislature intended exactly what it said in *N.J.S.A.* 18A:62–4—that any *person* who has resided in New Jersey for twelve months or more is to be presumed domiciled here.

Although it may be that an unemancipated minor cannot change her domicile of her own will, *Pieretti v. Pieretti,* 13 *N.J. Misc.* 98, 102, 176 *A.* 589 (Ch. Ct.1935), nothing in our law suggests that such a minor cannot establish a *residence* or that her residence as a minor cannot count towards the statutory presumption after she comes of age. Accordingly, it is clear that Shim is entitled to the benefit of the presumption of domicile.

## VII.

That brings us to the regulations and Rutgers' application of subsection (f) of *N.J.A.C.* 9A:5–1.1, which declares that "[d]ependent students as defined in the rules of the Higher Education Student Assistance Authority at *N.J.A.C.* 9A:9–2.6 [6] are presumed to be domiciled in the state in which their parent(s) or legal guardian(s) is domiciled" and that "[d]ependent students whose parent(s) or legal guardian(s) is not domiciled in New Jersey are presumed to be in the State for the temporary purpose of obtaining an education and presumed not to be domiciled in New Jersey."

---

[6] *N.J.A.C.* 9A:9–2.6 defines a dependent student as "any student who does not meet any of the eligibility criteria listed in (a) or (b) … for independent student status." *N.J.A.C.* 9A:9–2.6(c). Independent student status is defined in that regulation as a student who (1) "[i]s 24 years of age or older by December 31 of the award year"; (2) "[i]s an orphan or ward of the court or was a ward of the court until age 18"; (3) "[i]s a veteran of the Armed Forces of the United States"; (4) "[i]s a married individual"; (5) "[h]as legal dependents other than a spouse"; or (6) "[i]s a student for whom a financial aid administrator makes a documented determination of independence by reason of other unusual circumstances as provided under Title IV of the Higher Education Act of 1965, as amended, 20 *U.S.C.* § 1087vv, and its implementing regulations and rules." *N.J.A.C.* 9A:9–2.6(a) & (b)

*N.J.A.C.* 9A:5–1.1(f) is subject to at least two possible interpretations. One, adopted by Rutgers, is that despite having been resident for twelve months, if a student is dependent on parents, both of whom or even one of whom is not a domiciliary of New Jersey, she not only loses the statutory presumption but is also subject to the contrary regulatory presumption of non-domicile. The problem with that interpretation is that it goes too far and, thus, runs afoul of the statute. *N.J.S.A* 18A:62–4 states that "persons residing in New Jersey for a period of 12 months prior to enrollment ... are presumed to be domiciled in this State." *N.J.S.A.* 18A:62–4. That language offers no indication that some segment of the qualifying student population was intended *by the Legislature* to be subject to a confounding presumption.

 Although we defer to the rulemaking authority of administrative agencies, *In re Adoption of N.J.A.C. 7:26B,* 128 *N.J.* 442, 449, 608 *A.*2d 288 (1992) (stating that agency's regulations enjoy presumptive validity), if a regulation is "plainly at odds with the statute, [the Court] must set it aside." *In re Freshwater Wetlands Protection Act Rules,* 180 *N.J.* 478, 489, 852 *A.*2d 1083 (2004). Because Rutgers' interpretation would render the regulation plainly at odds with the statute, that interpretation cannot be countenanced.

However, *N.J.A.C.* 9A:5–1.1(f) is amenable to an alternative interpretation that does not contravene the statutory framework and that conforms with the law governing presumptions. Subsection (f) can reasonably be read as intending to declare that evidence of a student's financial dependence on her out-of-state parents is sufficient to raise a material issue of fact regarding the student's domicile, thus overcoming the presumption that flows from twelve months of residence here. Under that reading, which aligns with the law on presumptions, the playing field is evened and the student must prove her case, based on all the evidence, with no presumption either way.

 That is the only interpretation of subsection (f) that renders the statute and regulations a coherent and seamless

whole. Pursuant to it, a student who has lived in New Jersey for twelve months prior to enrollment is presumed to be a domiciliary for tuition purposes. If that student is, in fact, dependent on out-of-state parents, that dependence creates a genuine issue regarding domicile and the presumption in her favor is neutralized. Importantly, that does not give rise to the contrary presumption that she is a non-domiciliary. Rather, she is neither presumed a domiciliary nor presumed a non-domiciliary. Rutgers must then fully, fairly, and dispassionately consider *all* submitted evidence, including but not limited to evidence of the student's dependence on out-of-state parents. If a preponderance of the evidence indicates that the student's domicile is in New Jersey as defined in *N.J.A.C.* 9A:5–1.1(a) [7], then it must classify her as a domiciliary for in-state tuition purposes.

## VIII.

In this case, Shim established that she lived in New Jersey for four years prior to her enrollment at Rutgers at age eighteen. Thus, under *N.J.S.A.* 18A:62–4, she was a presumed New Jersey domiciliary. Rutgers rejected that presumption under the terms of *N.J.A.C.* 9A:5–1.1(f), flatly stating that "[r]eflective of the applicable state regulations ... an undergraduate student is presumed to have the residency status of her parents, unless she proves herself 'independent' as that term is defined[.]" Rutgers erred in applying that presumption of non-domicile and in refusing to consider the evidence Shim proffered that, notwithstanding her financial dependence on out-of-state parents, her domicile was, in fact, in New Jersey. To be sure, the financial details of Shim's support by her out-of-state parents were relevant to her domiciliary status and created a fact issue that overcame

---

[7] *N.J.A.C.* 9A:5–1.1(a) defines a domicile as "the place where a person has his or her true, fixed, permanent home and principal establishment, and to which, whenever he or she is absent, he or she has the intention of returning." *N.J.A.C.* 9A:5–1.1(a). This definition is the same as the common-law definition of domicile. *See Kurilla v. Roth*, 132 *N.J.L.* 213, 215, 38 *A.2d* 862 (Sup.Ct.1944).

the presumption in her favor. However, financial support alone did not create a counter-presumption of non-domicile and thus could not be outcome determinative. Rather, Rutgers was required to fully and fairly weigh all the other evidence proffered by the student with no presumption either way. Only after doing so, could Rutgers have determined that Shim was a non-domiciliary, and then only if the weight of the evidence on the record supported its conclusion.

By standing on what it incorrectly understood to be a presumption of non-domicile and limiting consideration of Shim's evidence to that which bore on her parents' financial support, Rutgers interpreted the regulations in a way that violated *N.J.S.A.* 18A:62–4 and denied Shim a fair opportunity to prove her domicile. We therefore affirm the judgment of the Appellate Division and remand the case to Rutgers for reconsideration in light of the principles to which we have adverted.

Justice RIVERA–SOTO, concurring in part and dissenting in part.

Rutgers, the State University of New Jersey, is a statutorily defined "public institution[ ] of higher education[,]" *N.J.S.A.* 18A:62–1, that traces its lineage to a royal charter dated November 10, 1766. *N.J.S.A.* 18A:65–2. From that genesis, its special position in New Jersey's system of public higher education has been cemented as an institution "impressed with a public trust for higher education of the people of the state of New Jersey; and which is the instrumentality of the state for the purpose of operating the state university." *Ibid.* In furtherance of Rutgers's mission, the Legislature has "declared to be the public policy of the State of New Jersey that ... resources be and continue to be ... appropriated by the State adequate for the conduct of a State university with high educational standards[.]" *N.J.S.A.* 18A:65–27.I.b. Recognizing Rutgers's taxpayer-funded status, the Legislature also has provided for a two-tiered system of tuition whereby "out-of-state student[s are] subject to signifi-

cantly higher tuition than that accorded New Jersey students."
*Lipman v. Rutgers–The State Univ. of N.J.,* 329 *N.J.Super.* 433,
436, 748 *A.*2d 142 (App.Div.2000).

In its narrowest sense, this appeal requires that we examine
Rutgers's determination that plaintiff Ezrina Shim was not domi-
ciled in New Jersey, thereby denying her in-state tuition status.
In doing so, we must first determine whether, as a matter of law,
plaintiff has met the statutory predicates for domicile and, hence,
eligibility for in-state tuition status; I conclude that she did not.
Further, even if plaintiff did meet those predicates, a plain lan-
guage reading of the applicable statute with the regulations of the
Commission on Higher Education governing the determination of
whether a student is eligible for state-resident tuition yields two
core conclusions: that they are harmonious with each other and
with the Legislature's mandate; and that Rutgers's determination
that plaintiff failed to qualify for in-state tuition status pursuant to
those regulations was neither arbitrary, nor capricious, nor unrea-
sonable, and therefore must be sustained.

That backdrop requires that I reach the following conclusions.
To the extent the majority concludes that "an appeal from a final
decision by [Rutgers] in respect of a student's domicile must lie in
the Appellate Division pursuant to *R.* 2:2–3(a)(2)[,]" *ante,* 191 *N.J.*
at 383 n. 4, 924 *A.*2d at 470 n. 4 (2007), and that the standard of
review of Rutgers's domicile decisions is the same as that applied
to all other administrative agencies, *ante* at 383–84, 924 *A.*2d at
471, I concur with the majority's views. However, to the extent
that, in this peculiar instance, the majority improperly conflates
residency and domicile, and to the extent the majority leapfrogs
over the plain language of the statute and instead starts its
analysis with the statute's legislative history, I respectfully dis-
sent.

I.

I am in general agreement with the majority's recitation of the
facts in this case. I emphasize the following. Plaintiff was born
on November 5, 1984. Thus, as of the date she matriculated at

Rutgers in 2003, less than twelve months had elapsed since she turned eighteen years old. Also, despite several requests from Rutgers, plaintiff repeatedly failed to provide information to support her claim that she was entitled to in-state tuition status. For example, in her original application for admission, plaintiff claimed she was entitled to in-state tuition status. By a letter dated March 5, 2003, Rutgers advised plaintiff of Rutgers's obligation to determine plaintiff's status, a "determination [that] is important not only for tuition assessment, but also for federal and state aid programs[.]" That letter also cautioned that "[i]f [plaintiff's] legal residency status remains unresolved at the time your term bill payment is due, you will be assessed non-resident charges until a final ruling is made." Rutgers made clear that "[a]ll requests for in-state residency status must be submitted prior to the start of classes."

Plaintiff did not respond. As a result, on June 17, 2003, Rutgers's office of university undergraduate admissions again wrote to plaintiff, exhorting her to submit the required information in a timely manner. In large measure, plaintiff also ignored that letter. Her sole response consisted of a letter dated July 30, 2003—six weeks later—from her "senior high youth pastor at Emmanuel Church in Philadelphia" who "assure[d Rutgers] that [plaintiff] has maintained residency at [her aunt's and uncle's] address [in Mount Laurel.]" Rutgers received that letter on August 11, 2003 and, the very next day, responded to plaintiff, acknowledged receipt of the letter and clearly explained that plaintiff had not met the legal requirements to claim in-state tuition status. Rutgers repeated yet once more its earlier warnings to plaintiff: "if your residency status is unresolved at the time payment is due, you will be required to pay the non-resident tuition rate[.]" Again, plaintiff did nothing.

Plaintiff matriculated for the Fall 2003 semester and started attending classes. Submitting a partially completed Residency Analysis Form dated November 1, 2003, plaintiff finally attempted to respond, albeit only in part, to Rutgers's repeated requests for information on which to base a decision on plaintiff's request for

in-state tuition status. Significantly, plaintiff did not "claim New Jersey residency for [t]uition purposes" for any of the stated reasons defined by the Commission on Higher Education.[1] Plaintiff scratched out that section of the Residency Analysis Form and, instead, enclosed a series of items she asserted supported her claim. Plaintiff supplemented her submissions on November 29, 2003.

Rutgers promptly acknowledged receipt of plaintiff's submission and denied her request for "in-state residency status for tuition purposes[,]" concluding that because plaintiff was dependent on her parents who are not New Jersey residents, she was "deemed to be a non-resident of New Jersey for tuition purposes." Rutgers also addressed plaintiff's argument that the regulations of the Commission on Higher Education were in conflict with "*N.J.S.A.* 18A:62–4, the state law which defines residency for tuition purposes." In Rutgers's view, "*N.J.S.A.* 18A:62–4 is silent as to the presumed domicile of a dependent student." Rutgers explained that "[a]bsent a statutory statement about the residency of a dependent student, there can be no conflict between the statute and the regulations; rather, the state regulations are indicative of a reasonable exercise of the regulatory authority of a state agency to interpret the statute." Noting that plaintiff had "failed to provide the required disclosure regarding parental financial assistance" and that "evidence of residence in New Jersey for the sole purpose of attending school and a presence in the state is, in and of itself, insufficient to establish residence for the purpose of in-state tuition[,]" Rutgers denied plaintiff's request.

---

[1] These are that the student "[i]s 24 years of age or older by December 31 of the award year; or ... [i]s an orphan or ward of the court or was a ward of the court until age 18; or [i]s a veteran of the Armed Forces of the United States; or [i]s a graduate or professional student; or [i]s a married individual; or [h]as legal dependents other than a spouse; or [i]s a student for whom a financial aid administrator makes a documented determination of independence by reason of other unusual circumstances as provided under Title IV of the Higher Education Act of 1965, as amended, 20 *U.S.C.* § 1087vv, and its implementing regulations and rules." *N.J.A.C.* 9A:9–2.6(a)1, (b)1 to (b)6.

Plaintiff filed timely appeals of Rutgers's determination denying her in-state tuition status,[2] each of which was denied. Responding to plaintiff's first appeal and pointedly combining common sense with public policy considerations, Rutgers reasoned that

> [t]he regulation's rule of imputed domicile for dependent students makes perfect sense. The Commission, in a reasonable exercise of administrative discretion, recognized that most undergraduate students are financially dependent on their parents. Furthermore, the parents are the parties who pay taxes that fund state universities. Thus, pursuant to applicable regulations, the residence of the parents of an undergraduate student dictates the tuition status, not the residence of the student. If this rule did not apply, the funding for the state universities would be at risk, because students would be able to pay in-state tuitions while their parents do not pay taxes in New Jersey. This would create an incentive for out-of-state applicants to establish an address in New Jersey solely to obtain in-state tuition status while their parents avoid paying the New Jersey taxes that support the university. Moreover, a student who remains financially dependent upon his or her parent has not truly severed the bonds which connect that student to the parents' home, and if these bonds continue to exist the student cannot establish a domicile in New Jersey.

Rutgers explained that "[d]espite prompting, you have neither provided the required disclosure regarding parental financial assistance nor sought to declare yourself independent[,]" which led Rutgers to "believe that you would be unable to declare yourself independent."

## II.

### A.

The majority first concludes that residency in New Jersey while plaintiff was still a minor should be counted towards determining

---

[2] According to Rutgers's policy governing in-state residency for tuition purposes, "[a]ppeals from the initial determination and any determination made after a request by a student for a change in residency status will be accepted no later than three months after the date of notification of any such determination that is appealed." Furthermore, shortly after her receipt of Rutgers's decision denying her in-state tuition status, plaintiff made inquiry directly to Rutgers's office of university undergraduate admissions and was advised, by a letter dated December 11, 2003, the location where any appeal must be lodged and that it "must be submitted within three months from the date of my [December 4, 2003] letter."

whether she meets the statutory requirement of domicile in New Jersey for in-state tuition purposes. I do not agree.

In-state tuition determinations at New Jersey's public institutions of higher education are governed by *N.J.S.A.* 18A:62–4, which provides in full that

> Persons who have been resident within this State for a period of 12 months prior to enrollment in a public institution of higher education are presumed to be domiciled in this State for tuition purposes. Persons who have been resident within this State for less than 12 months prior to enrollment are presumed to be nondomiciliaries for tuition purposes. Persons presumed to be nondomiciled or persons who are presumed to be domiciled, but whose domiciliary status is challenged by the institution, may demonstrate domicile according to rules and regulations established for that purpose by the Commission on Higher Education. Residence established solely for the purpose of attending a particular educational institution is not domicile for the purposes of this act.

Thus, the triggering event for a determination of whether a student is entitled to an in-state tuition discount is the student's domicile. In *N.J.S.A.* 18A:62–4, the Legislature provided two sources to be used in making that determination: either a statutory presumption, or a mechanism for demonstrating domicile—the "rules and regulations established for that purpose by the Commission on Higher Education"—when the application of the statutory presumption is challenged either by the student or by the institution.

Hewing to that analytical structure of the statute, we are called on first to consider whether plaintiff is entitled to a statutory presumption of domicile. It is only after that threshold is breached that we may address whether the statute and its implementing regulations are in harmony.

### B.

Plaintiff asserts that a plain reading of the statute requires the conclusion that she is presumed to be a domiciliary of New Jersey. As plaintiff sees it, all *N.J.S.A.* 18A:62–4 requires for a determination of New Jersey domicile is that the "[p]ersons ... have been resident within this State for a period of 12 months prior to enrollment in a public institution of higher education[.]" Plaintiff

notes that, because it is uncontradicted that she was resident in this State since 1999, she satisfied the twelve-month statutory requirement.

Although possessing superficial appeal, that argument does not withstand closer scrutiny. Imbedded in the facts in this case is that, when she relocated to New Jersey, plaintiff was but fourteen-years-old and did not reach the age of majority—age eighteen, *N.J.S.A.* 9:17B–3—until shortly before she applied for admission to Rutgers. Because a minor is legally unable to establish domicile, any period of residency prior to plaintiff's eighteenth birthday is simply irrelevant. Further, because as of the time plaintiff matriculated, started classes, or even tardily applied for in-state tuition status, she had not yet had twelve months of residency in New Jersey as an adult, she does not qualify for the application of the statutory presumption.

"Domicile is in 'a strict legal sense ... the place where [a person] has his true, fixed, permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning, and from which he has no present intention of moving.'" *In re Jacobs*, 315 *N.J.Super.* 189, 193–94, 717 *A.*2d 432 (Ch.Div.1998) (quoting *Cromwell v. Neeld*, 15 *N.J.Super.* 296, 300, 83 *A.*2d 337 (App.Div.1951)). It has long been New Jersey law that "[e]very person has a domicile at all times, and no person has more than one domicile at any one time." *In re Estate of Gillmore*, 101 *N.J.Super.* 77, 87, 243 *A.*2d 263 (App.Div.), *certif. denied*, 52 *N.J.* 175, 244 *A.*2d 304 (1968). It is a core tenet of our law that "[a] domicile once established continues until it is superseded by a new one" and that "[d]omicile may be acquired in one of three ways: (1) through birth or place of origin; (2) through choice by a person legally capable of choosing his domicile[;] and (3) through operation of law in the case of a person who lacks capacity to acquire a new domicile by choice." *Ibid.*

The discrete issue presented in this case is whether plaintiff, although still a minor, could establish her domicile in New Jersey while her parents remained in Korea. Applying time-honored

rules for the determination of a person's domicile, the answer to that question must be "no." Following the general trend, New Jersey has consistently held that

> [t]he domicile of the child follows the domicile of the father. It is settled that persons not *sui juris* are assigned a domicile by operation of law; a legitimate child takes the domicile of its father at birth; regardless of where the child may actually live, the domicile of the father is that of the child during minority.
>
> [*A v. M and C,* 74 *N.J.Super.* 104, 110, 180 *A.*2d 541 (Middlesex County Ct.1962).]

In the parallel context of a free public high school education of a minor, it has been held that "the domicile of an unemancipated child is the domicile of the parent, custodian or guardian." *P.B.K. v. Bd. of Educ. of the Borough of Tenafly,* 343 *N.J.Super.* 419, 427, 778 *A.*2d 1124 (App.Div.2001). *See also Pieretti v. Pieretti,* 13 *N.J. Misc.* 98, 102, 176 *A.* 589 (Ch. Ct.1935) (holding that "the domicile of a legitimate unemancipated minor, whose will cannot concur with the fact of residence, is, if his father be living, the domicile of the father; that a minor cannot change his domicile of his own will"); *Renner v. Renner,* 13 *N.J. Misc.* 749, 765, 181 *A.* 191 (Ch. Ct.1935) (same); *Rinaldi v. Rinaldi,* 94 *N.J. Eq.* 14, 21, 118 *A.* 685 (Ch. Ct.1922) (same); *Hess v. Kimble,* 79 *N.J. Eq.* 454, 457, 81 *A.* 363 (Ch. Ct.1911) (holding that "[i]t is an undisputed position of all jurists ... that, of his own accord, *proprio marte,* the minor cannot change his domicil" (citing *Phillimore on Domicil,* at 37)); *Blumenthal v. Tannenholz,* 31 *N.J. Eq.* 194, 197 (Ch. Ct.1879) (same).

The governing principle is clear: "It is the general rule that an unemancipated infant cannot of its own volition acquire a new domicile." *In re Adoption of Susan—,an infant,* 22 *N.J. Misc.* 181, 185, 37 *A.*2d 645 (Orphans Ct.1944) (citing *In re Estate of Russell,* 64 *N.J. Eq.* 313, 53 *A.* 169 (Prerog.Ct.1902); *Van Matre v. Sankey,* 148 *Ill.* 536, 36 *N.E.* 628 (1893); *Sudler v. Sudler,* 121 *Md.* 46, 88 *A.* 26 (1913)). Because plaintiff offered no proofs of emancipation, she was legally barred from establishing a domicile different from that of her parents until she reached the age of majority. The application of that principle leads to two separate but consistent results: all proofs tendered by plaintiff in respect of

her residency in New Jersey prior to reaching her eighteenth birthday were legally irrelevant; and, as of the time she applied for admission to Rutgers, was accepted, matriculated and started classes there, and applied for in-state tuition status—most importantly, at the statutorily defined time of the "period of 12 months *prior to enrollment*[,]" *N.J.S.A.* 18A:62–4—plaintiff plainly was unable, as a matter of law, to satisfy the twelve-month residency requirement giving rise to a presumption of domicile under *N.J.S.A.* 18A:62–4. Therefore, as a threshold matter, plaintiff does not qualify for in-state tuition status under *N.J.S.A.* 18A:62–4

### III.

Even if plaintiff, by reason of her continued residency, was qualified to apply for in-state tuition status, the inquiry is not at an end. A plain reading of the statute instructs that, after defining who is entitled to a statutory presumption of domicile, *N.J.S.A.* 18A:62–4 further provides that "persons who are presumed to be domiciled, but whose domiciliary status is challenged by the institution, may demonstrate domicile according to rules and regulations established for that purpose by the Commission on Higher Education." That, in a nutshell, is this case: by operation of the first sentence of the statute, plaintiff could be presumed to be domiciled in New Jersey, but her domiciliary status was challenged by Rutgers. The issue is joined once the challenge is interposed. Once so joined, the Legislature directs that the person seeking domiciliary status—and, hence, the in-state tuition discount—bears the burden of "demonstrat[ing] domicile according to [the] rules and regulations established for that purpose by the Commission on Higher Education." *See Lipman, supra,* 329 *N.J.Super.* at 445, 748 *A.*2d 142 (explaining that "the applicable regulations and Rutgers'[s] policies required Lipman to prove he was domiciled in New Jersey").

Whether the regulations of the Commission on Higher Education are consonant with the provisions of *N.J.S.A.* 18A:62–4 requires the invocation of established principles:

[W]e set forth the general principles in reviewing a challenged rule. We start with the premise that we must give great deference to an agency's interpretation and implementation of its rules enforcing the statutes for which it is responsible. Such deference is appropriate because it recognizes that "agencies have the specialized expertise necessary to enact regulations dealing with technical matters and are particularly well equipped to read and to evaluate the factual and technical issues that rulemaking would invite." Consequently, agency rules are accorded a presumption of validity and reasonableness, and the challenging party has the burden of proving the rule is at odds with the statute.

Despite that deference, a rule will be set aside if it is inconsistent with the statute it purports to interpret. That is, the agency may not under the guise of interpretation give the statute any greater effect than its language allows. Thus, if the regulation is plainly at odds with the statute, we must set it aside.

[*In re Freshwater Wetlands Prot. Act Rules*, 180 *N.J.* 478, 488–89, 852 *A.2d* 1083 (2004) (citations, internal quotation marks and editing marks omitted).]

Our task, then, is to determine whether the applicable regulations are "inconsistent with the statute it purports to interpret" so that "under the guise of interpretation" Rutgers does not "give the statute any greater effect than its language allows." *Ibid.*

Those regulations appear initially at *N.J.A.C.* 9A:5–1.1. *N.J.A.C.* 9A:5–1.1(a) defines "domicile" consistent with black-letter law: "Domicile is defined as the place where a person has his or her true, fixed, permanent home and principal establishment, and to which, whenever he or she is absent, he or she has the intention of returning." [3] The next four subsections of this regulation, *N.J.A.C.* 9A:5–1.1(b) to –1.1(e), separately repeat the four sentences of *N.J.S.A.* 18A:62–4. The next regulatory provision, the one most relevant here, states that:

Dependent students as defined in the rules of the Higher Education Student Assistance Authority at *N.J.A.C.* 9A:9–2.6 are presumed to be domiciled in the state in which their parent(s) or legal guardian(s) is domiciled. Dependent students whose parent(s) or legal guardian(s) is not domiciled in New Jersey are presumed to be in the State for the temporary purpose of obtaining an education and presumed not to be domiciled in New Jersey.

[*N.J.A.C.* 9A:5–1.1(f).]

The Higher Education Student Assistance Authority regulations, *N.J.A.C.* 9A:9–2.6(c), define a "dependent student" as "any student

---

[3] That definition is adopted almost verbatim from *Kurilla v. Roth*, 132 *N.J.L.* 213, 215, 38 *A.2d* 862 (Sup.Ct.1944).

who does not meet any of the eligibility criteria listed ... for independent student status[,]" the very eligibility criteria Rutgers explicitly listed on its Residency Analysis Form and the precise questions plaintiff refused to answer for obvious reasons: plaintiff admittedly did not satisfy the criteria for independent student status set forth in *N.J.A.C.* 9A:9–2.6(a) or (b).

Those regulations are entirely consonant with *N.J.S.A.* 18A:62–4. By its own terms, the statute delegates to the Commission on Higher Education the authority to define the scope of any challenge to a domicile determination. It is not claimed that there was any irregularity in the adoption of the relevant regulations; all that is alleged is that those regulations somehow exceed the scope of the statute. I cannot agree. Instead, those regulations sensibly and reasonably define what is necessary to overcome either a statutory presumption of non-domicile or a challenge to a statutorily presumed domicile, nothing more and nothing less. More importantly, those regulations are in harmony with the provisions of *N.J.S.A.* 18A:62–4 and, therefore, cannot be voided as *ultra vires.*

The application of those regulations to the proofs adduced demonstrates that Rutgers concluded, at least preliminarily, that plaintiff's presence in New Jersey before she enrolled at Rutgers *may* have entitled her to the statutory presumption of domicile. Rutgers, however, as explicitly authorized by the statute, challenged plaintiff's domicile. At that point, again, the statute requires that plaintiff—*not* Rutgers—"demonstrate [her] domicile *according to [the] rules and regulations established for that purpose by the Commission on Higher Education.*" *N.J.S.A.* 18A:62–4 (emphasis supplied). Plaintiff failed in meeting that burden.

The majority, however, approaches this matter differently. Addressing first the statute's legislative history, the majority explains that *N.J.S.A.* 18A:62–4's "legislative history is critical to any analysis of the statute." *Ante* at 385, 924 *A.*2d at 472. I disagree

with that approach. The hierarchical analysis to be applied in construing a statute is well-settled:

> The Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language. We ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole. It is not the function of this Court to rewrite a plainly-written enactment of the Legislature or presume that the Legislature intended something other than that expressed by way of the plain language. We cannot write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment, or engage in conjecture or surmise which will circumvent the plain meaning of the act. Our duty is to construe and apply the statute as enacted.
>
> A court should not resort to extrinsic interpretative aids when the statutory language is clear and unambiguous, and susceptible to only one interpretation. On the other hand, if there is ambiguity in the statutory language that leads to more than one plausible interpretation, we may turn to extrinsic evidence, including legislative history, committee reports, and contemporaneous construction. We may also resort to extrinsic evidence if a plain reading of the statute leads to an absurd result or if the overall statutory scheme is at odds with the plain language.
>
> *Our analysis, therefore, begins with the plain language of the statute.*
>
> [*DiProspero v. Penn,* 183 *N.J.* 477, 492–93, 874 *A.*2d 1039 (2005) (citations, internal quotation marks and editing marks omitted; emphasis supplied).]

*N.J.S.A.* 18A:62–4 is in no wise ambiguous. It states that one who has been a resident of this State for twelve months *prior to enrollment* at Rutgers is presumed to be a domiciliary and, hence, entitled to in-state tuition status. As a matter of law, plaintiff simply did not qualify as she could not have been a legal resident for domicile purposes while she was a minor. In any event, in unambiguous language *N.J.S.A.* 18A:62–4 addresses what is to be done if an applicant either (a) is presumed a domiciliary by reason of residency but that domicile is challenged by Rutgers, or (b) is not presumed to be a domiciliary by reason of residency: "Persons presumed to be nondomiciled or persons who are presumed to be domiciled, but whose domiciliary status is challenged by the institution, may demonstrate domicile according to rules and regulations established for that purpose by the Commission on Higher Education." Here, Rutgers determined that plaintiff failed to demonstrate domicile "according to rules and regulations established for that purpose by the Commission on Higher Education[,]" *N.J.S.A.* 18A:62–4, a determination that must be sus-

tained "unless: (1) it was arbitrary, capricious, or unreasonable; (2) it violated express or implied legislative policies; (3) it offended the State or Federal Constitution; or (4) the findings on which it was based were not supported by substantial, credible evidence in the record." *Ante* at 384, 924 *A*.2d at 471.

In this record, it cannot be said that Rutgers's denial of in-state tuition status to plaintiff was arbitrary, capricious, or unreasonable; based on our canons of statutory interpretation, it cannot be said that Rutgers's determination violated any legislative policies, whether express or implied; it cannot be said that this determination offended any constitutional provision; and it cannot be said that Rutgers's decision was not supported by the record evidence. In such an instance, our duty is clear: we are oath-bound to sustain the action of the administrative agency.

## IV.

For the reasons explained both here and in Judge Wefing's clear and well-reasoned dissent in the Appellate Division, *Shim v. Rutgers-the State Univ. of N.J.,* 385 *N.J.Super.* 200, 208–11, 896 *A*.2d 1118 (App.Div.2006) (Wefing, J., dissenting), I would reverse the judgment of the Appellate Division and reinstate the domicile determination made by Rutgers denying plaintiff's application for in-state tuition status for the academic year 2003–2004. To the extent the majority rules differently, I respectfully dissent.[4]

*For affirmance*—Chief Justice ZAZZALI and Justices LONG, LaVECCHIA, ALBIN, WALLACE and HOENS—6.

*For concurrence in part; dissentment in part*—Justice RIVERA–SOTO—1.

---

[4] The relief afforded by the majority is to remand the matter to Rutgers "for reconsideration in light of the principles to which [the majority] ha[s] adverted." *Ante* at 384, 924 *A*.2d at 476. It bears highlighting that nothing in the majority's decision commands any particular result; Rutgers, in the proper exercise of its administrative authority and discretion, may revisit plaintiff's application and still find it wanting.